Exhibit 1

| | |
|---|---|
| District Court, Jefferson County, State of Colorado<br>100 Jefferson County Parkway<br>Golden, Colorado<br>(720) 772-2500 | DATE FILED: September 8, 2022 11:31 AM<br>FILING ID: 20B6289A30052<br>CASE NUMBER: 2022CV31048 |
| Plaintiff,<br><br>**A.C., by and through his mother and next friend, MARIA VITALE,** an individual,<br><br>v.<br><br>Defendant,<br><br>**SOLEN USA, LLC**, a Georgia Company. | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiff<br>Spencer J. Kontnik, #47447<br>Morgan E. Hamrick, #52711<br>KONTNIK | COHEN, LLC<br>201 Steele Street, Suite 210<br>Denver, CO 80206<br>Phone: (720) 449-8448<br>Fax: (720) 223-7273<br>Email: skontnik@kontnikcohen.com<br>Email: mhamrick@kontnikcohen.com | Case Number:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff ("Plaintiff" or "A.C."), by and through its attorneys Spencer J. Kontnik and Morgan E. Hamrick of KONTNIK | COHEN, LLC, respectfully submit the following Complaint in this action. For the reasons set forth below, and because it is in the interest of justice, the relief sought herein should be granted and should enter in favor of Plaintiff:

## I.    PARTIES

1.    Plaintiff is a minor who resides in Wheat Ridge, Colorado. A.C. and was age 10 at the time of the incident.

1

2. Defendant Solen USA, LLC ("Defendant or "Solen") is limited liability company with a corporate address of 3348 Peachtree Rd NE Ste 700 Atlanta, GA, 30326-1682. Defendant sells its products in interstate commerce, including Colorado, using the Amazon internet platform.

## II. JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper for this civil action for damages and/or equitable relief pursuant to Article VI, § 9 of the Constitution for the State of Colorado.

4. Personal Jurisdiction is proper because the acts or omissions material to Plaintiff's claims arose and occurred in Jefferson County in the State of Colorado.

5. Venue is proper in this Court, pursuant to Rule 98(c)(5) of the Colorado Rules of Civil Procedure because the action for torts may be tried in the county in which the tort was committed.

## III. FACTUAL ALLEGATIONS

6. Plaintiff has life-threatening allergies to peanuts, tree nuts and some fish.

7. On November 28, 2020, while Ms. Maria Vitale was ordering items from Amazon, Amazon suggested that she try the Biscolata Dark Chocolate Rolled Wafer.

8. The Biscolata Dark Chocolate Rolled Wafer was manufactured by Defendant Solen USA, LLC.

9. Ms. Vitale clicked on link for the wafers and checked the ingredients listed on the webpage. The ingredient description did not include either the presence of tree nuts and/or hazelnuts, and therefore, appeared to be safe for her son A.C.'s allergies.

10. Ms. Vitale purchased a box of the wafers.

11. On November 30, 2020, at 12:12 p.m., the package containing the Biscolata Dark Chocolate Rolled Wafers from Amazon arrived at Ms. Vitale's residence in Colorado.

12. Shortly thereafter, Ms. Vitale opened the package and removed the box of wafers.

13. Ms. Vitale read the ingredient label on the box and the label on an individual wafer packet, and just as she had seen on the website, neither label listed nuts as an ingredient. A copy of both labels are attached hereto as Exhibit A.

14. A.C. looked at the package of wafers and asked Ms. Vitale if the wafers were safe for his allergy.

15. Ms. Vitale stated that, based on the label on the package, the wafers looked safe to eat, but told A.C. to read the label himself to double-check if the wafers were safe.

16. A.C. read the label himself and saw that the wafers did not contain tree nuts.

17. Because both A.C. and Ms. Vitale did not see any harmful ingredients on the label, they determined that the wafers were safe for A.C. to eat.

18. A.C. ate a wafer with some milk.

19. Approximately five minutes later, A.C. complained that his mouth and throat were itching.

20. Ms. Vitale observed that A.C.'s lips starting to swell.

21. Ms. Vitale immediately gave A.C. 0.25 mg of Benadryl and had him rinse out his mouth in the bathroom.

22. When A.C. came out of the bathroom, the swelling had slightly improved, but his throat was still itchy.

23. Ms. Vitale gave A.C. his albuterol inhaler and 0.25mg budesonide.

24. Ms. Vitale continued to monitor A.C.'s symptoms to see if the mediations were working.

25. About twenty minutes later, A.C. was laid on the couch and started to complain that his stomach was hurting.

26. Ms. Vitale gave him a few pretzels to eat with ½ tablet of Pepcid, as this remedy sometimes helps when A.C. has stomach pain.

27. Ms. Vitale then returned the Pepcid to the shelf.

28. When Ms. Vitale returned to the living room, she observed that A.C.'s lips had turned blue, and his face, eyes, ears and lips were red and swollen.

29. Ms. Vitale also observed that A.C. had developed hives all over his back and stomach, and that he was suffering from nose congestion.

30. Ms. Vitale immediately brought A.C. to her car and drove to the hospital.

31. The hospital is only seven minutes away from her home.

32. While Ms. Vitale was driving A.C. to the hospital, A.C.'s congestion increased, and he was having difficulty breathing.

33. In the car, Ms. Vitale noticed that A.C.'s lips looked worse, and the swelling intensified.

34. When Ms. Vitale and A.C. arrived at the Lutheran Medical Center Emergency Room approximately three minutes later.

35. As Ms. Vitale and A.C. were in triage, Ms. Vitale had an Epi-pen in her hand ready to inject A.C. at any moment.

36. A.C.'s blood pressure was high.

37. A.C's oxygen saturation was low.

38. A.C. was given an IV, which hurt him greatly.

39. Through the IV, A.C. received more Benadryl and steroids.

4

40. A.C.'s ears were bright red and hurt.

41. A.C.'s care team at the hospital continued to monitor him, coming in frequently to assess his vital signs, swelling and hives.

42. A.C. was not allowed to wear a mask, and both he and Ms. Vitale feared that they were being exposed to COVID in the emergency room.

43. After about three more hours, A.C. was discharged from the hospital.

44. On the drive home, Ms. Vitale asked A.C. how he was feeling and what he was thinking. He replied, "I'm better now, but I was scared. I thought God was going to take me tonight."

45. Later that night, Ms. Vitale and A.C. discussed what had transpired that evening. Ms. Vitale said, "What am I supposed to do if something happens to you, how can I live my life?"

46. A.C. replied to his mother: "Well, if something like that happens, you just have to accept that God wants it that way and that God has a plan for it."

47. Ms. Vitale watched over A.C. that night as he tried to sleep. She kept going over in her mind how quickly he went from feeling fine to almost dying. She was up all night worried about him and was unable to go to work the next day.

48. For the next four days A.C. took Benadryl every four to six hours, Pepcid daily for four days and Prednisolone (steroids) for four days.

49. Ms. Vitale's husband went to the Amazon webpage that advertised the Biscolata Dark Chocolate Rolled Wafer. In the review section, he noticed a post about a girl having had an anaphylactic reaction after having eaten a Biscolata Dark Chocolate Rolled Wafer.

50. Ms. Vitale called Amazon at 11:10 a.m. and spoke with a woman named Kaciny for approximately forty-four minutes, explaining what had happened.

51. Amazon started an investigation and refunded Ms. Vitale her money for the purchase.

52. At approximately 11:59am, Ms. Vitale next called the 1-800 number on the package of the wafers and left a message on the answering machine stating that she was calling to ask about their Biscolata Dark Chocolate Rolled Wafer.

53. At 12:26 p.m., a man named Jim Kleming (caller I.D. JMK 313-903-1464) called her back.

54. When Ms. Vitale asked him if the Biscolata wafer roll had any peanuts, tree nuts or cross contamination in them, he answered, "The cookies are made in highly robotic facility and there couldn't be any cross contamination."

55. However, Mr. Kleming stated that the manufacturing plant may have a hazelnut section in the facility.

56. Mr. Kleming told Ms. Vitale that he would have Ender, the North American Regional manager call her back.

57. Ender never called.

58. Ms. Vitale later filed an online complaint about what had happened with the Food and Drug Administration.

59. Ms. Vitale sent a wafer to the Food Allergy Research and Resource Program in Nebraska which is known nationwide for its program for testing allergens. The lab report came back stating that the wafers contained greater than 5,000 ppm of hazelnut, which is a

6

considerable amount and certainly more than a trace. A copy of that report is attached hereto as Exhibit B.

60. A.C. suffered physical injuries and both Ms. Vitale and A.C. suffered extreme emotional distress, which continues to this day.

## IV. FIRST CLAIM FOR RELIEF
(Breach of Implied Warranty)

61. Plaintiff hereby incorporates the foregoing allegations as if fully set forth.

62. Defendant, as the designer, manufacturer, marketer distributor and/or seller of the Biscolata Dark Chocolate Rolled Wafer impliedly warranted that they did not contain tree nuts.

63. Defendant breached the warranty implied in the contract and in common law for the sale of the Biscolata Dark Chocolate Rolled Wafer because they could not pass without o0bjection in the trade under the contract description, and the goods were unfit for their ordinary purposes because the package did not warn consumers that it contained tree nuts.

64. As a result, Plaintiff did not receive the goods as impliedly warranted by Defendant to be merchantable.

65. Plaintiff purchased the Biscolata Dark Chocolate Rolled Wafers in reliance upon Defendant's skill and judgment and the implied warranties of fitness for a particular purpose that it was safe for consumers with tree nut allergies.

66. The Biscolata Dark Chocolate Rolled Wafers were not altered by Plaintiff.

67. The Biscolata Dark Chocolate Rolled Wafers were defected when they left the exclusive control of the Defendant.

68. Defendant knew that the Biscolata Dark Chocolate Rolled Wafers would be purchased and used by Plaintiff.

7

69. The Biscolata Dark Chocolate Rolled Wafers were defectively designed, misbranded, and unfit for their intended purpose, and Plaintiff did not receive the goods as warranted.

70. Plaintiff would not have purchased the Biscolata Dark Chocolate Rolled Wafers if they had known they did in fact contain tree nuts.

71. As a direct and proximate cause of Defendant's breach of warranty, Plaintiff has been injured and harmed.

## V.  SECOND CLAIM FOR RELIEF
(Negligence)

72. Plaintiff hereby incorporates the foregoing allegations as if fully set forth.

73. Defendant, as seller of the goods and as the party responsible for putting the goods in the stream of commerce, owed a duty to Plaintiff that the goods would be safe to consume.

74. Defendant knew or should have known that its product, the Biscolata Dark Chocolate Rolled Wafers, contained tree nuts.

75. Defendant breached its duty of care by failing to label the Biscolata Dark Chocolate Rolled Wafers for the presence of tree nuts.

76. Defendant also violated 21 U.S.C. 343(w) (the Food Allergen Labeling and Consumer Protection Act) by failing to label a packaged product for the presence of tree nuts, one of the allergens required to be labelled by that statute.

77. As a direct and proximate cause of Defendant's negligence, Plaintiff has been injured and harmed and has suffered both physical and emotional injuries.

## VI.  THIRD CLAIM FOR RELIEF
(Misrepresentation)

78. Plaintiff hereby incorporates the foregoing allegations as if fully set forth.

79. Defendant failed to disclose that its product contained tree nuts.

80. Defendant had a duty to disclose the presence of tree nuts in its product.

81. At the time Defendant made its representations that the product did not contain tree nuts, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

82. At a minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Biscolata Dark Chocolate Rolled Wafers. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff reasonable and justifiably relied, were intended to induce and actually induced Plaintiff to purchase the Biscolata Dark Chocolate Rolled Wafers.

83. Plaintiff would not have bought the Biscolata Dark Chocolate Rolled Wafers if the true facts had been known.

84. As a direct and proximate cause of Defendant's misrepresentation, Plaintiff has been injured and harmed and has suffered both physical and emotional injuries.

### VII.   FOURTH CLAIM FOR RELIEF
(Violation of Consumer Protection Statute, C.R.S. §6-1-101, et. seq.)

85. Plaintiff hereby incorporates the foregoing allegations as if fully set forth.

86. On or about January 26, 2022, Plaintiff sent Defendant a demand letter by both first class mail and registered mail to the Defendant.

87. Defendant engaged in unfair and deceptive business practices by knowingly manufacturing and putting into interstate commerce a product that contained tree nuts but failing to label it as such.

88. The actions of the Defendant, by failing to disclose a major allergen in its product, were misleading and were a material part of the transaction. If Plaintiff had known the Biscolata

Dark Chocolate Rolled Wafers contained tree nuts, he would have refrained from purchasing and consuming it. Instead, Plaintiff relied on the label made by the Defendant that assured him the product would be safe.

89. As a direct and proximate cause of Defendant's actions, Plaintiff has been injured and harmed and has suffered both physical and emotional injuries.

### VIII. FIFTH CLAIM FOR RELIEF
(Negligent Infliction of Emotional Distress)

90. Plaintiff hereby incorporates the foregoing allegations as if fully set forth.

91. Defendant owed Plaintiff a duty of care in taking reasonable precautions to warn the consumer that its product contained a major allergen.

92. Defendant breached this duty of care by placing a product with a known allergen into the stream of commerce and failing to disclose the presence of the allergen.

93. It was foreseeable that Defendant's breach of duty would result in physical harm and severe emotional distress. A reasonable person would have suffered such harm under the circumstances present in this case.

94. As a direct and proximate cause of Defendant's actions, Plaintiff has been injured and harmed and has suffered both physical and emotional injuries.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provided the following relief:

A. For an order finding in favor of Plaintiff on all counts asserted herein;

B. For compensatory and punitive damages in amounts to e determined by the finder of fact;

C. For prejudgment interest on all amounts awarded;

D.  For injunctive relief ordering the Defendant to stop engaging in such unlawful acts, including, but not limited to, requiring Defendant to declare the presence of tree nuts on its labels;

E.  For an award of treble damages as attorneys fees; and

F.  For whatever other relief this Honorable Court deems just.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Date:

        Respectfully submitted,

        A.C., Plaintiff, by his attorneys,

        s/ *Spencer Kontnik*
        Spencer J. Kontnik, #47447
        Morgan, E. Hamrick, #52711
        KONTNIK | COHEN, LLC
        201 Steele Street, Ste. 210
        Denver, CO 80206

        s/ *Laurel Francoeur*
        Laurel J. Francoeur
        Pro hac vice pending
        Mass BBO # 633805
        Francoeur Law Office
        63 Shore Road, Suite 24
        Winchester, MA 01890

# EXHIBIT A





Ingredients

Sugar, cocoa butter, vegetable oil shortening (palm), wheat flour, milk, coconut, skim milk less than two percent of butterfat, whey, lecithin (sunflower, soy), egg whites, salt, artificial flavors (coconut, vanillin).. Contains milk, wheat, soy and egg.





# EXHIBIT B



INSTITUTE OF AGRICULTURE AND NATURAL RESOURCES
FARRP ANALYTICAL LABORATORY

Food Allergen Residue Analytical Report 532977-1

December 7, 2021

Maria Vitale
3860 Taft Ct.
Wheat Ridge, CO 80033

Dear Maria Vitale,

My laboratory has completed the analysis of the biscolata roll sample received Monday, November 22, 2021. The laboratory tested the sample for hazelnut using a specific commercial test method designed to detect small traces of this food.

The biscolata roll sample was positive for hazelnut.

Please do not hesitate to contact me if you have any questions regarding this report or for any assistance we can give you in the future at 402-472-3070, by email at jbaumert2@unl.edu, or my laboratory at 402-472-4484.

Sincerely,

Joseph Baumert, Ph.D.
Director
Food Allergy Research and Resource Program
University of Nebraska

*The information, advice and opinions provided by a University of Nebraska employee represent the best judgment of the employee at that time, but should not be considered legal advice on any local, state, federal or international regulation or statute. We encourage you to contact the applicable regulatory agency and/or qualified attorney to confirm the information presented in this correspondence.*



**Food Allergy Research and Resource Program (FARRP)**     Page 1 of 2
Sean Kraft | Debra Lambrecht | Lynn Niemann | FARRP Analytical Laboratory Managers
276 Food Innovation Center, 1901 N. 21st Street | Lincoln, NE 68588-6207 | 402.472.4484 |402.472.4474
(Fax) farrplab@unl.edu | https://farrp.unl.edu



INSTITUTE OF AGRICULTURE AND NATURAL RESOURCES
FARRP ANALYTICAL LABORATORY

Food Allergen Residue Analytical Report 532977-2

December 7, 2021

Maria Vitale
3860 Taft Ct.
Wheat Ridge, CO 80033

The testing of the biscolata roll sample received Monday, November 22, 2021 has been completed (see below).

| Sample Description | Hazelnut |
|---|---|
| Biscolata Roll (Dark Chocolate) Lot No: G0179A1G08 | >5,000 ppm |

Amounts below the lower limit of quantitation (LOQ), as listed below, cannot be reliably detected. One part per million (ppm) is equivalent to 1 milligram per kilogram of sample product.

| Test Method Description | Lower Limit of Quantitation |
|---|---|
| Neogen Veratox® for Hazelnut Allergen Quantitative Test (SOP-HAZ-405) | 2.5 ppm total hazelnut |

**IMPORTANT NOTE**: If the possible source of allergen contamination in your samples is from fermentation, or consists of fermented or hydrolyzed materials, current test methods cannot measure allergen levels appropriately in these cases. This can result in a severe underestimate of the allergen content of your samples. In these special cases, a BLQ reading may be indicated but there still could be enough allergenic residues left over to be capable of causing an allergic reaction. If your sample is of this type, please contact the FARRP laboratory at 402-472-4484 for further assistance.

The FARRP Analytical Laboratory did not perform on site sampling for test sample(s). Results reported above, are representative of the sample received and tested. Results do not guarantee the condition of the larger sample/lot from which the test material is taken. Samples were received in acceptable condition unless otherwise noted. When sample condition is noted in this testing report, testing proceeded only at the direction of our client.

This report shall not be reproduced except in full, without written approval of the laboratory.

Please contact Debra Lambrecht or Sean Kraft at 402-472-4484, or email at dlambrecht1@unl.edu and skraft2@unl.edu, if you have any questions regarding this report. For questions regarding procedures, quality control and accreditation matters and/or concerns or complaints, please contact Lynn Niemann at 402-472-4484 or via e-mail at lniemann1@unl.edu.

Sincerely,

Ryan McDonald
Analyst

*The information, advice and opinions provided by a University of Nebraska employee represent the best judgment of the employee at that time, but should not be considered legal advice on any local, state, federal or international regulation or statute. We encourage you to contact the applicable regulatory agency and/or qualified attorney to confirm the information presented in this correspondence.*



Food Allergy Research and Resource Program (FARRP)    Page **2** of **2**
Sean Kraft | Debra Lambrecht | Lynn Niemann | FARRP Analytical Laboratory Managers
276 Food Innovation Center, 1901 N. 21st Street | Lincoln, NE 68588-6207 | 402.472.4484 |402.472.4474
(Fax) farrplab@unl.edu | https://farrp.unl.edu