IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 22-cv-02804-GPG-SBP

A.C. by and through his mother and next friend, MARIA VITALE, an individual,

Plaintiff,

v.

SOLEN USA, LLC,

Defendant.

---

**ORDER**

---

Before the Court are Defendant's Motion for Summary Judgment (D. 51) and Plaintiff's Motion for Summary Judgment (D. 74). The Court DENIES the motions for the following reasons.

## I. FACTS

This civil action arises from an allergic reaction suffered by Plaintiff A.C. shortly after ingesting a food product sold by Defendant Solen USA, LLC that was not labeled as containing nuts.[1]

On November 28, 2020, Plaintiff's mother, Maria Vitale, bought a box of wafers called "Biscolata Dark Chocolate Rolled Wafer" on Amazon.com (D. 74 at ¶ 3). The Biscolata package

[1] The Court draws the operative facts as set forth in Defendant's Statement of Undisputed Material Facts (D. 51 at 3–8) and Plaintiff's Undisputed Material Facts (D. 2–4). *See Glenwood Springs Citizens' All. v. U.S. Dep't of the Interior*, No. 24-CV-00445-GPG-RTG, 2025 WL 2608089, at *1–*4 (D. Colo. July 28, 2025) (discussing Fed. R. Civ. P. 56(c), (e); D.C.COLO.LCivR 56.1(a); and GPG Civ. Practice Standard 7.1D—Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 56). The Court finds the following facts undisputed for the purposes of deciding the motions. The facts are identified by paragraph number. Relevant information supported by admissible evidence from the Parties' briefing is discussed in the Analysis section below.

did not list nuts and/or hazelnut as an ingredient, nor did the package make any reference to hazelnuts or nuts (D. 74 at ¶ 6). The product's description on Amazon.com also did not list hazelnuts as an ingredient or allergen (D. 74 at ¶ 7).

On November 30, 2020, Plaintiff ate one of the wafers (the Wafer) (D. 74 at ¶ 4). Plaintiff was aged 10 at the time (D. 74 at ¶ 1). Plaintiff has life-threatening allergies to peanuts, hazelnuts and some fish (D. 74 at ¶ 2). Plaintiff had an allergic reaction just minutes after consuming the Wafer, which caused him to seek treatment at the emergency room at Lutheran Medical Center hospital (D. 51 at ¶ 3; D. 74 at ¶ 5).

Defendant is a limited liability company, established under the laws of the state of Georgia (D. 51 at ¶ 1). Defendant only distributes food products in the United States manufactured by Şölen Cikolata Gida Sanayi Ve Ticaret AS (Solen Turkey) (D. 51 at ¶ 2; D. 74 at ¶ 13). Defendant did not manufacture the Wafer. (D. 51 at ¶¶ 4, 5, 6). Defendant does not have warehouses, but rather it imports products for shipment directly to third-party distribution centers where the products are stored until they are shipped to customers (D. 51 at ¶ 7). Defendant did not modify the product before distributing it (D. 51 at ¶ 22). Defendant did not label the Wafer, nor does it label any products. (D. 51 at ¶ 28).

Defendant is owned by Erdogan Coban (D. 51 at ¶ 10). Mr. Coban is also the CEO of Solen Turkey (D. 51 at ¶ 11). Mr. Coban owns 4% of Solen Turkey (D. 51 at ¶ 13). Solen Turkey utilizes four companies to distribute products in the USA (Turkana, UBC Foods, Delphia, and Defendant). (D. 51 at ¶ 8).

Turkey is a member of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (Hague Service Convention), which

provides for service of process on entities in Turkey (D. 51 at ¶ 16). But Plaintiff did not attempt to gain jurisdiction over the Solen Turkey (D. 51 at ¶ 15).

Defendant received a call to the 1-800 number provided on the packaging on October 28, 2020, in which a woman alleged her child had an allergic reaction to a product Defendant distributed (D. 51 at ¶ 32). Ender Tunali, who has worked for both Defendant and Solen Turkey, received an email on October 28, 2020, that stated, "A mom called to complain about an allergic reaction her daughter had after eating a dark chocolate roll (possible Luppo?) purchased at Amazon and the package did not state processed in a facility using tree nuts. Her daughter is also allergic to hazelnuts" (D. 74 at ¶ 15).

Defendant also received one Amazon review on November 13, 2020, from an Amazon user named "Joni" claiming her child had an allergic reaction to a wafer (D. 51 at ¶ 33).

Defendant no longer sells the Wafer on Amazon, and Solen Turkey has since updated its label to include an allergen warning (D. 51 at ¶ 36).

Plaintiff asserts five claims for relief: (I) breach of implied warranty, (II) negligence, (III) misrepresentation, (IV) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 (CCPA), and (V) negligent infliction of emotional distress (D. 7). Both Parties move for summary judgment on all claims (D. 51; D. 74).

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the factual record and reasonable inferences based on said record "in the light most favorable to the non-moving party." *Utah Lighthouse Ministry v. Found. for*

*Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* If the moving party meets this burden, the opposing party must go beyond the pleadings and designate evidence showing there is a genuine triable issue. *Celotex*, 477 U.S. at 323–24. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "[Q]uestions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial." *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980). Cross-motions for summary judgment must be viewed separately, and the denial of one does not necessitate the granting of the other. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016) (citations omitted).

## III. ANALYSIS

Defendant argues in various ways that it cannot be held liable because it did not make and label the Wafer. These arguments are inconsistent with the Colorado consumer protection laws, which generally hold sellers liable for product defects, subject to exceptions not applicable here.

**A. Defendant is Not an Innocent Seller.**

Defendant argues that four of Plaintiff's claims (claims I, II, III, and V) are barred by Colorado's Innocent Seller Statute. The statute provides:

> (1) No product liability action shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action. Nothing in this part 4 shall be construed to limit any other action from being brought against any seller of a product.
>
> (2) If jurisdiction cannot be obtained over a particular manufacturer of a product or a part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom jurisdiction can be obtained shall be deemed, for the purposes of this section, the manufacturer of the product.

Colo. Rev. Stat. § 13-21-402. The relevant terms are defined in relevant part as:

> (1) "Manufacturer" means a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer. The term includes any seller who has actual knowledge of a defect in a product or a seller of a product who creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process or who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer. The term also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer. A seller not otherwise a manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he did not otherwise specify how the product shall be produced or control, in some significant manner, the manufacturing process of the product and the seller discloses who the actual manufacturer is.
>
> (2) "Product liability action" means any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on

> account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product.
>
> (3) "Seller" means any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption.

Colo. Rev. Stat. § 13-21-401.

*1. Colorado Courts Lack Jurisdiction Over the Manufacturer.*

Plaintiff argues that the exception to the innocent seller statute that applies in circumstances where "jurisdiction cannot be obtained" over the manufacturer applies here (D. 74 at 14–15). Defendant argues that it does not apply because Plaintiff did not attempt to obtain jurisdiction over the manufacturer, relying on *Johnson v. Micro-Mom Scooters, LLC*, No. 20-CV-03174-RM-MEH, 2022 WL 2467585, at *2 (D. Colo. July 6, 2022) (D. 51 at 11–12).

Defendant misstates the holding of *Johnson* as requiring that a plaintiff show that it first attempted to obtain jurisdiction over the manufacturer. It contains no such requirement, and the *Johnson* court ruled against the plaintiff because he "adduced no evidence that jurisdiction cannot be obtained over the actual manufacturer" and "failed to meaningfully address Defendant's assertion that jurisdiction likely could be established over the actual manufacturer." *Johnson v. Micro-Mom Scooters, LLC*, No. 20-CV-03174-RM-MEH, 2022 WL 2467585, at *2. Here, as noted below, Plaintiff has made the necessary showing based on the undisputed facts. The plain language of the statute does not require an attempt to obtain jurisdiction, only that "jurisdiction

cannot be obtained." Colo. Rev. Stat. § 13-21-402. Plaintiff bears the burden of making this showing. *Johnson*, No. 20-CV-03174-RM-MEH, 2022 WL 2467585, at *2.

The Court is persuaded by Plaintiff's argument that the manufacturer is not subject to personal jurisdiction in Colorado because it lacks minimum contacts with the state. There is no dispute that neither Defendant nor Solen Turkey directly conduct business or own property in Colorado (*see* D. 74 at 14–15; D. 78 at 17–18). Defendant purchases the products and resells them itself (D. 51 at ¶¶ 2, 7; D. 51-1 at 11; D. 74 at ¶ 13). Thus, Solen Turkey was not involved in the relevant sales transaction and merely put its products into the international stream of commerce, which is insufficient for personal jurisdiction in Colorado. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980); *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 918 (10th Cir. 2017) (finding Colorado's long arm statute, Colo. Rev. Stat. § 13-1-124, did not permit personal jurisdiction over out-of-state manufacturer). Accordingly, the Court finds as a matter of law that the jurisdictional exception to the innocent seller statute applies and Defendant may be deemed the manufacturer for the purposes of the Colorado's Innocent Seller Statute. Colo. Rev. Stat. § 13-21-402(2).

*2. There is Genuine Dispute as to Whether Defendant Had Actual Knowledge.*

Even if the Court had jurisdiction over Solen Turkey, the undisputed facts would preclude summary judgment that defendant is an innocent seller.

The undisputed facts show that Defendant was aware of two separate reports of allergic reactions from its product before Plaintiff's allergic reaction. Notwithstanding this notice, Defendant asserts that it cannot be held to have actual knowledge of the defect under two cases from other judges in this District is argues hold that awareness of injury is insufficient to create

actual knowledge of defect (D. 51 at 12–13). But these cases do not establish any such principle and are not binding authority. In *Perez v. Sunbeam Prods., Inc.*, the notification at issue did "not identify any defect in the Multi-Cooker" and did "not disclose the nature of any technical, mechanical, or design flaw in the Multi-Cooker." No. 21-CV-01915-PAB-KAS, 2023 WL 6377502, at *4 (D. Colo. Sept. 29, 2023). The *Church v. Dana Kepner Co.* court explicitly rejected an argument that the information related to a defect was insufficient because it "would only have provided [the defendant] with knowledge of the dangerous characteristics of asbestos **in a general sense**" and not with information about "risks stemming from design, manufacturing, and/or marketing defects—**of the asbestos cement pipes it sold**." No. 11-CV-02632-CMA-MEH, 2012 WL 4086517, at *3 (D. Colo. Sept. 16, 2012) (emphasis in original). Here, the reports that Defendant received and reviewed specifically indicated that customers had allergic reactions likely triggered by nut contamination (D. 51 at ¶ 32; D. 74 at ¶¶ 15, 17). This is sufficient for a reasonable jury to conclude that Defendant had knowledge of the specific defect at issue.[2] Thus, summary judgment would be inappropriate even if the Court could obtain jurisdiction over Solen Turkey.

**B. Plaintiff's Per Se Negligence Theory is Viable.**

Plaintiff argues that sellers of food in Colorado implicitly warrant that the food is fit for human consumption and are strictly liable for selling food that is not (D. 74 at 6–7). Plaintiff further argues that failure to properly label food with allergens is negligence per se because it violates the statutory standard provided by the Food Allergen Labeling Consumer Protection Act of 2004 (FALCPA) (D. 74 at 16–17).

[2] For this same reason, the Court denies summary judgment on Defendant's claim IV for violation of the CCPA. *See Crowe v. Tull*, 126 P.3d 196 (Colo. 2006) (holding that knowledge is sufficient for liability).

Aside from raising the innocent seller defense, rejected above, Defendant provides limited argument concerning its lack of negligence. It argues that it was not negligent because it "did not label the Wafer" (D. 51 at 17; *see also* D. 78 at 18). This does not answer Plaintiff's argument because it does not address whether a defendant is liable simply by virtue of selling adulterated food. Further, the undisputed facts establish that Defendant purchased the Wafer and owned it before resale. Regardless of whether Defendant did not create the label on the product, this does not address whether Defendant had a duty to *provide* an accurate label or, at least, not sell food with a dangerously inaccurate label. The caselaw and statutory authority cited by Plaintiff suggests that Defendant did have a duty to provide an accurate label, that failure to do so constitutes negligence, and that Defendant is liable as a matter of law if it sold adulterated food.

Plaintiff relies on *Gonzales v. Safeway Stores, Inc.*, 147 Colo. 358 (1961). The *Gonzales* plaintiffs brought a claim for damages for "defendant's sale to them of food allegedly unfit for human consumption" because it contained a bug. *Id.* at 359. The Court explained that it "is elementary that one who sells an article for use as food for human consumption is held in law to have impliedly warranted that it is fit for the purpose for which it was sold, and for breach of that warranty proximately resulting in injury may be held to respond in damages." *Id.* at 361. It referred to a statute embodying this principle that, as discussed below, has been replaced. *Id.* ("C.R.S. '53, 121–1–15, provides in subsection (2): 'Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality.'"). But it also recognized as a matter of Colorado common law that, "[a]side from the statute, we recognize the general rule to be that a retailer who sells unwholesome food for human consumption is liable to

the customer for the consequences under an implied warranty imposed by law as a matter of public policy, even though the food is in sealed containers bearing the label of the manufacturer and the retailer has no means of knowing that the contents are unfit for human consumption." *Id.* (citing *Griggs Canning Co. v. Josey*, 139 Tex. 623, 625, 164 S.W.2d 835, 836 (1942)).

Defendant notes that *Gonzales* "predated the statutory innocent seller rule" and argues that it is "premised on C.R.S. § 121-1-15," which it could not locate. These arguments are unavailing. That *Gonzales* predates the innocent seller rule is indisputable, but that does not mean it does not remain good law. The statutory exception provided by the innocent seller rule is inapplicable here, for the reasons explained above. Although the Colorado Supreme Court discussed a statute as the basis for the claim, it also explicitly recognized the rule of implied warranty on an independent basis as a matter of public policy. That such implied warranties followed products as a matter of common law was well established at the time. *See Griggs Canning Co.*, 139 Tex. at 625 ("The general rule is well established that in the sale of food products for immediate consumption by human beings there is an implied warranty that the commodity is wholesome and is fit for the purpose for which it is sold.") (citations omitted); *B. F. Goodrich Co. v. Hammond*, 269 F.2d 501, 504 (10th Cir. 1959) ("There was, therefore, an implied warranty by Goodrich of the fitness of the tires for the purpose for which they were designed, namely, use as a tire protected against sudden blowouts.").

Such implied warranties as a matter of common law have generally been codified in Uniform Sales Act and, thereafter, Uniform Commercial Code--Sales. *See* 135 A.L.R. 1393 (Originally published in 1941); Short Title., Unif.Commercial Code § 2-101 official comment ("This Article is a complete revision and modernization of the Uniform Sales Act"). Colorado's

enactment of the relevant provision, which appears to have replaced the statue quoted in *Gonzales* and is entitled "Implied warranty--merchantability--usage of trade," provides:

> (1) Unless excluded or modified (section 4-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as:
>
> (a) Pass without objection in the trade under the contract description; and
>
> (b) In the case of fungible goods, are of fair average quality within the description; and
>
> (c) Are fit for the ordinary purposes for which such goods are used; and
>
> (d) Run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and
>
> (e) Are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) Conform to the promises or affirmations of fact made on the container or label if any.
>
> (3) Unless excluded or modified (section 4-2-316), other implied warranties may arise from course of dealing or usage of trade.

Colo. Rev. Stat. § 4-2-314. Thus, Colorado law continues to recognize an implicit warranty follows a sale. Indeed, this statutory provision "has been recognized as the basis for claims against restaurants or others who sell contaminated food or beverages." *Gangemi v. AMF Bowling Centers, Inc.*, 722 F. Supp. 3d 1170, 1175 (D. Colo. 2024) (citing Jordan Lipp and Ed Hafer, *What's in the Package: Food, Beverage and Dietary Supplement Law and Litigation—Part I,* 43-Jul Colo. Law. 77, at *81–82 and n.103 (July 2014)). Accordingly, the Court finds as a matter of

law that if Plaintiff shows the Wafer contained unlabeled allergens, Plaintiff has shown a violation of the relevant standard by showing the goods were not fit for consumption or did not conform to the affirmations made on the packaging. *Gonzales,* 147 Colo. at 361; C.J.I. § 14:12 (2025) source and authority (noting the "instruction is supported by *Gonzales* . . . [which] held that this warranty applied to a retailer selling foodstuffs in sealed containers who was unaware of the lack of the ordinary fitness of the food.").

### C. Disputes of Material Fact Otherwise Preclude Summary Judgment.

Ultimately, however, disputes of material fact preclude summary judgment. Although the undisputed evidence strongly suggests that the Wafer consumed by Plaintiff contained unlabeled allergens that caused the allergic reaction, Defendant raises a colorable dispute as to the admissibility of some of this evidence and disputes the inference that the Wafer ingested by Plaintiff contained such allergens (D. 78 at 3). Even if the admissibility is resolved in Plaintiff's favor, viewing the facts in the light most favorable to Defendant, the factual dispute must be left to the jury. *See Vanadium Corp. of Am. v. Wesco Stores Co.*, 135 Colo. 77 (1957) (holding that the burden is on the plaintiff to prove that the food was not merchantable at the time of sale). Accordingly, the Court will deny summary judgment.

## IV. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (D. 51) and Plaintiff's Motion For Summary Judgment (D. 74) are DENIED.

DATED September 30, 2025.

BY THE COURT:



Gordon P. Gallagher
United States District Judge