IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 22-cv-02804-GPG-SBP

A.C. by and through his mother and next friend, MARIA VITALE, an individual,

Plaintiff,

v.

SOLEN USA, LLC,

Defendant.

---

**ORDER**

---

Before the Court is Plaintiff's Expedited Motion for Partial Summary Judgment or, Alternatively, for Relief under Fed. R. Civ. P. 56(g) (Motion) (D. 124). Plaintiff seeks summary judgment on its negligence per se claim (*id*. at 4). The Court GRANTS the Motion for the following reasons.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This case arises from Plaintiff A.C.'s consumption of a Biscolata wafer distributed by Defendant Solen USA, LLC. Plaintiff is allergic to hazelnuts and had an allergic reaction after eating the wafer. The relevant facts are explained in more detail in the Court's September 30, 2025 Order denying the Parties' cross-motions for summary judgment (D. 82).

The case is now set for a jury trial to begin in a few days. Defendant previously disputed that the wafer contained unlabeled allergens, namely, hazelnuts (D. 82 at 12). Less than a week before trial, Defendant changed its position and stipulated that the wafer contained hazelnuts, causing Plaintiff's allergic reaction. Specifically, the Parties filed a Stipulations of Fact as part of preparing the jury instructions that include:

> 1. Defendant Solen USA sold the at-issue Biscolata Dark Chocolate Rolled Wafer on Amazon.
>
> 2. Plaintiff A.C. is a person who was reasonably expected to use or consume the at-issue Wafer.
>
> 3. Defendant Solen USA is a "Merchant."
>
> 4. The labelling on the at-issue Biscolata Dark Chocolate Rolled Wafer does not reference hazelnuts.
>
> 5. The description on Amazon.com did not list hazelnuts as an ingredient or allergen.
>
> **6. Hazelnuts were present in the at-issue Biscolata Dark Chocolate Rolled Wafer.**
>
> 7. Plaintiff A.C. ingested the at-issue Biscolata Dark Chocolate Rolled Wafer.
>
> 8. Plaintiff A.C. is allergic to hazelnuts.
>
> **9. The at-issue Biscolata Dark Chocolate Rolled Wafer caused Plaintiff A.C. to have an allergic reaction on November 30, 2020.**

(D. 123 at 1–2) (emphasis added).

The Court's prior summary judgment Order contained a discussion of the history and state of Colorado law on warranties of merchantability for food, which the court incorporates herein (D. 82 at 8–12). Based on its review of the relevant law, "the Court [found] as a matter of law that if Plaintiff shows the Wafer contained unlabeled allergens, Plaintiff has shown a violation of the

relevant standard by showing the goods were not fit for consumption or did not conform to the affirmations made on the packaging" (*id*. at 11–12) (citations omitted). The Court denied summary judgment on the plaintiff's claim because, "[a]lthough the undisputed evidence strongly suggests that the Wafer consumed by Plaintiff contained unlabeled allergens that caused the allergic reaction, Defendant raises a colorable dispute as to the admissibility of some of this evidence and disputes the inference that the Wafer ingested by Plaintiff contained such allergens" (*id*. at 12). That dispute is now gone.

The Court held a hearing on October 30, 2026, in preparation for trial and heard argument on the Motion. After the Court directly inquired if Defendant wished to lodge a written response, Defendant elected to stand on their oral arguments without filing a brief. *See* D.C.COLO.LCivR 7.1(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

Defendant argues that summary judgment should not enter because it is not the manufacturer of the wafer and has no control over the contents of the product. It further asserts that hazelnuts are not an "ingredient" within the meaning of the Food, Drug, and Cosmetic Act codified at 21 U.S.C. 343(w), which prescribes federal labeling requirements for major food allergens. Defendant asserts that, for his negligence claim, Plaintiff must prove fault and that it is not at fault as the distributor for cross-contamination occurring at the manufacturer.

The Court's earlier order largely addressed and resolved these issues.[1] As the Court explained:

[1] The Court did not address federal labeling requirements because it is sufficient that Plaintiff has shown a violation of the warranty of merchantability or Colorado law.

> Regardless of whether Defendant did not create the label on the product, this does not address whether Defendant had a duty to *provide* an accurate label or, at least, not sell food with a dangerously inaccurate label. The caselaw and statutory authority cited by Plaintiff suggests that Defendant did have a duty to provide an accurate label, that failure to do so constitutes negligence, and that Defendant is liable as a matter of law if it sold adulterated food.
>
> Plaintiff relies on *Gonzales v. Safeway Stores, Inc.*, 147 Colo. 358 (1961). The *Gonzales* plaintiffs brought a claim for damages for "defendant's sale to them of food allegedly unfit for human consumption" because it contained a bug. *Id.* at 359. The Court explained that it "is elementary that one who sells an article for use as food for human consumption is held in law to have impliedly warranted that it is fit for the purpose for which it was sold, and for breach of that warranty proximately resulting in injury may be held to respond in damages." *Id.* at 361. It referred to a statute embodying this principle that, as discussed below, has been replaced. *Id.* ("C.R.S. '53, 121–1–15, provides in subsection (2): 'Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality.'"). But it also recognized as a matter of Colorado common law that, "[a]side from the statute, we recognize the general rule to be that a retailer who sells unwholesome food for human consumption is liable to the customer for the consequences under an implied warranty imposed by law as a matter of public policy, even though the food is in sealed containers bearing the label of the manufacturer and the retailer has no means of knowing that the contents are unfit for human consumption." *Id.* (citing *Griggs Canning Co. v. Josey*, 139 Tex. 623, 625, 164 S.W.2d 835, 836 (1942)).

(D. 82 at 9–10).

Plaintiff's argument that it is not at fault because it did not manufacture the wafer cannot be squared with Colorado law. *Gonzales* involved a suit against a retailer, and the Colorado Supreme Court explained that liability attached even to resellers "even though the food is in sealed containers bearing the label of the manufacturer and the retailer has no means of knowing that the contents are unfit for human consumption." 147 Colo. at 361. Colorado has, by statute, shifted

most such liability to manufacturers through the Innocent Seller Statute, Colo. Rev. Stat. § 13-21-401, -402. But, for the reasons the Court explained in its earlier Order, Defendant cannot avail itself of those protections in the specific circumstances of this case (*see* D. 82 at 5–8).

This does not end the inquiry because negligence per se must be founded on violation of a statutory standard. "The underlying principle of the common law doctrine of negligence per se is that legislative enactments such as statutes and ordinances can prescribe the standard of conduct of a reasonable person such that a violation of the legislative enactment constitutes negligence." *Lombard v. Colo. Outdoor Educ. Center, Inc.*, 187 P.3d 565, 573 (Colo. 2008) (citation omitted). "A party may recover under a claim of negligence per se if it is established that the defendant violated the statutory standard and the violation was the proximate cause of the injuries sustained." *Id*. *Gonzalez*, however, relates to the common law and the statues applicable at the time, which have since been replaced (*see* D. 82 at 10).

Plaintiff seeks to premise liability on the federal major allergen labeling requirements codified at 21 U.S.C. 343(w) and Colorado requirements codified at Colo. Rev. Stat. §§ 25-5-403, -411 (D. 124 at 3). Plaintiff's assertion under the federal law runs into problems because of the issue of cross-contact, i.e., cross-contamination, which is what Defendant contends occurred here. "Allergen cross-contact is the unintentional incorporation of a food allergen into a food" that does not contain that allergen as an ingredient. *See Sec. 555.250 Major Food Allergen Labeling and Cross-contact Draft Compliance Policy Guide Guidance for FDA Staff* 1 (May 2023), https://www.fda.gov/media/168000/download. Plaintiff does not cite any authority for the proposition that failure to label food with allergens resulting from cross-contact violates the statute. The Food and Drug Administration, which is charged with interpreting and enforcing labeling

requirements, has taken the contrary position that "[m]ajor food allergens unintentionally incorporated into a food are not to be declared in the ingredient list or the 'Contains' statement." *Id*. at 1–2. Such potential cross-contaminants would, instead, be properly listed under a non-mandatory "may contain" statement. Thus, the Court cannot conclude as a matter of law that Defendant violated the federal standard for major allergen labeling.

Plaintiff's arguments under Colorado's statues are on firmer ground because the cited provisions prohibit "sale . . . of any food . . . that is adulterated or misbranded," Colo. Rev. Stat. §§ 25-5-403(1)(a), and a "food is deemed to be misbranded" when "its labeling is false or misleading in any particular," § 25-5-411(1)(a). Defendant does not argue that the label on the wafer was accurate, only that it did not create the label.[2] It also does not argue that its Amazon listing for the product, which also failed to mention hazelnuts, was not misleading. Nor does Defendant contend that the product was not adulterated within the meaning of the statute by the presence of hazelnuts. "Adulterated" most commonly refers to dilution by combination with inferior ingredients, but it can also refer to contamination or corruption. *See* Bryan A. Garner, *Garner's Modern English Usage 4th ed*. 24 (Oxford University Press, 2016).

Colorado's high standards for the warranty of merchantability for foodstuffs also have a statutory hook in the warranty of merchantability codified by statute in Colorado's enactment of the Uniform Commercial Code—Sales, Colo. Rev. Stat. § 4-2-314. Goods must be "fit for the ordinary purposes for which such goods are used," which in the case of sales of foodstuffs requires safe human consumption. *Id*. at § 4-2-314(c); *see also* D. 82 at 11 (citing *Gangemi v. AMF Bowling*

[2] Because Defendant waived the opportunity to brief these issues and rested on its argument, the Court has also reviewed and considered the arguments raised by Defendant on these issues in its response to the earlier motion for summary judgment (D. 78 at 18–19).

*Centers, Inc.*, 722 F. Supp. 3d 1170, 1175 (D. Colo. 2024) (citing *Jordan Lipp and Ed Hafer, What's in the Package: Food, Beverage and Dietary Supplement Law and Litigation—Part I*, 43-Jul Colo. Law. 77, at *81–82 and n.103 (July 2014) (for the proposition that Colorado's statutory warranty of merchantability "has been recognized as the basis for claims against restaurants or others who sell contaminated food or beverages.")). The presence of unlabeled hazelnuts may not present the same broad objectionability of the bug allegedly contained in the canned goods in *Gonzales,* but the hazelnuts nonetheless present dangerous contamination to a measurable portion of the population.

Ultimately, the Court finds that Plaintiff has established liability under the undisputed facts. The undisputed facts are a much cleaner fit for his breach or warranty claim that this negligence per se claim, but negligence per se is the claim the Plaintiff seek summary judgment on. Colorado's prohibitions on misleading packaging and adulterated foods as well as requirements of merchantability are intended to allow customers, such as Plaintiff, to read the labels and listings to determine what is in them in part for safety. The undisputed facts show that a failure to indicate on the package that it had hazelnut contamination led to Plaintiff's injuries. This is sufficient to find negligence per se. *Lombard*, 187 P.3d at 576.

Accordingly, the Motion (D. 124) is GRANTED.

DATED November 1, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge